IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

NATIONAL CASUALTY INSURANCE       §
COMPANY,                          §
                                  §
              Plaintiff,          §
                                  §
v.                                §
                                  §
ORION TRANSPORT, INC. and         §       CIVIL ACTION NO. H-09-1539
SILVIA BRUNE, Individually        §
and as Representative of THE      §
ESTATE OF JAMES BRUNE,            §
Deceased, and CODY BRUNE          §
and CORY BRUNE,                   §
                                  §
              Defendants.         §

**MEMORANDUM OPINION AND ORDER**

    This action is brought by plaintiff, National Casualty
Insurance Company (National), against defendants, Orion Transport,
Inc. (Orion), and Silvia Brune, individually and as representative
of the Estate of James Brune, deceased, and the children of Silvia
and James Brune -- Cody Brune and Cory Brune -- (collectively, "the
Brunes"), for a declaratory judgment pursuant to 28 U.S.C. § 2201
and Rule 57 of the Federal Rules of Civil Procedure adjudicating
the rights and obligations of the parties under the insurance
policy issued by National to Orion.  Subject matter jurisdiction is
based on diversity of citizenship under 28 U.S.C. § 1332.  Pending
before the court are Defendants Silvia Brune, Cody Brune and Cory
Brune's Motion for Summary Judgment (Docket Entry No. 14);

Defendants Silvia Brune, Cody Brune and Cory Brune's Motion to
Dismiss Under Rule 12(b)(6) (Docket Entry No. 15); and Plaintiff
National Casualty Insurance Company's Response to Defendants'
Motion for Summary Judgment and Cross-Motion for Summary Judgment
(Docket Entry No. 20).  For the reasons explained below, the
Brunes' motion to dismiss under Rule 12(b)(6) will be moot, the
Brunes' motion for summary judgment will be granted in part and
denied in part, National's cross-motion for summary judgment will
be denied, and this action will be stayed pending resolution of the
underlying action.

### I.  Undisputed Facts

On February 4, 2009, Orion hired welder James Brune to perform
maintenance on its 1977 Heil Tanker Trailer (serial no. 928580).
While Brune was performing the requested maintenance, the trailer
exploded injuring Brune, who later died of his injuries.  The
Brunes initiated an action styled <u>Silvia Brune, Individually and as
Representative of the Estate of James Brune, and Cody Brune and
Cory Brune v. ETOCO, L.P., ETOCO Management, LLC and Orion
Transportation, Inc.</u>, in the 55th Judical District Court of
Harris County, State of Texas ("underlying action").  In that
action the Brunes allege that negligent acts and omissions of Orion
were the proximate cause of the injuries and death of James Brune.
A copy of Plaintiffs' Second Amended Petition in the underlying
action is attached as Exhibit A to National's Second Amended
Complaint for Declaratory Judgment (Docket Entry No. 19).

National issued Policy No. CT00118238 (Policy) to Orion, effective February 9, 2008 - February 9, 2009.  A copy of the Policy appears as Exhibit B attached to plaintiff's Second Amended Complaint for Declaratory Judgment (Docket Entry No. 19).  The Policy provides Commercial Auto (Business Auto or Truckers) Coverage subject to certain terms, conditions, limitations, definitions, and exclusions, and provides that National "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."[1]  The Policy requires that the "bodily injury" or "property damage" be caused by an "accident" and result "from the ownership, maintenance or use of a covered auto."[2]

On May 21, 2009, National filed this action seeking declaratory judgment that it has no duty to defend and/or indemnify Orion in the underlying action because the claims asserted by the Brunes are precluded by the Policy's Pollution Exclusion (Docket Entry No. 1).  National is defending Orion in the underlying action pursuant to a reservation of rights.[3]

---

[1]Exhibit B attached to plaintiff's Second Amended Complaint for Declaratory Judgment (Plaintiff's Second Amended Complaint), Docket Entry No. 19, Section II.A.

[2]<u>Id.</u>

[3]Plaintiff National Casualty Insurance Company's Response to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment (Plaintiff's Response and Cross-Motion), Docket Entry No. 20, p. 1.

## II.  **Defendants' Motion to Dismiss**

Defendants' "Motion to Dismiss [is] based on Plaintiff's First Amended Complaint,"[4] Docket Entry No. 13, filed on October 19, 2009.  On November 5, 2009, National filed an Unopposed Motion for Leave to File Second Amended Complaint for Declaratory Judgment (Docket Entry No. 17), which the court granted the next day (Docket Entry No. 18).[5]  Since the live pleading in this action is the Second Amended Complaint for Declaratory Judgment (Docket Entry No. 19), the defendants' motion to dismiss the plaintiff's first amended complaint filed on October 19, 2009, is **MOOT**.

## III.  **Cross-Motions for Summary Judgment**

This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 for the purpose of determining rights and obligations, if any, of the parties under Policy No. CT00118238 issued by National to Orion.  National contends that it is entitled to declaratory judgment that it has no duty to defend and/or indemnify Orion because the Brunes seek damages for bodily injury and death sustained by James Brune that arise from claims for which coverage is barred by the Policy's Pollution Exclusion.  The Brunes have moved for summary judgment on grounds that Texas law requires,

---

[4]Defendants Silvia Brune, Cody Brune and Cory Brune's Motion to Dismiss Under Rule 12(b)(6), Docket Entry No. 15, p. 1.

[5]<u>See</u> Order granting Docket Entry No. 17, Motion for Leave to File Second Amended Complaint, Docket Entry No. 18.

and National agreed to pay, such claims and that under a plain reading of the Policy, the Pollution Exclusion does not apply to bar their claims. National has filed a cross-motion for summary judgment on grounds that the Pollution Exclusion contained in the Policy bars coverage for the Brunes' claims.

## A.   Applicable Law

### 1.   Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S.Ct. at 2553-2554). If the moving party

-5-

meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial.  <u>Id.</u> (citing <u>Celotex</u>, 106 S.Ct. at 2553-2554).  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  <u>Reeves v. Sanderson Plumbing Products Inc.</u>, 120 S.Ct. 2097, 2110 (2000).  Factual controversies must be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  <u>Little</u>, 37 F.3d at 1075.

   2.   <u>Insurance Contract Construction</u>

   In a diversity case such as this, a federal court must apply the substantive law of the forum state.  <u>See Aubris Resources LP v. St. Paul Fire and Marine Ins. Co.</u>, 566 F.3d 483, 486 (5th Cir. 2009).  The parties agree that the substantive law of Texas applies in this case.[6]  Under Texas law insurance policies are contracts that are governed by the principles of interpretation applicable to contracts in general.  <u>See Amica Mutual Ins. Co. v. Moak</u>, 55 F.3d 1093, 1095 (5th Cir. 1995) (citing <u>Barnett v. Aetna Life Ins. Co.</u>, 723 S.W.2d 663, 665 (Tex. 1987)).  "When the terms of an insurance policy are unambiguous, a court may not vary those terms."  <u>Moak</u>,

---

[6]See Defendants Silvia Brune, Cody Brune and Cory Brune's Motion for Summary Judgment, Docket Entry No. 14, p. 6, and Plaintiff's Response and Cross-Motion, Docket Entry No. 20, p. 3.

55 F.3d at 1095 (citing Royal Indemnity Co. v. Marshall, 388 S.W.2d 176, 181 (Tex. 1965)).  "When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue."  "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered."  Coker, 650 S.W.2d at 394.  "A contract, viewed in its entirety, 'is ambiguous only if it is reasonably susceptible to more than one meaning.'" Mid-Continent Casualty Co. v. Chevron Pipe Line Co., 205 F.3d 222, 231 (5th Cir. 2000) (quoting Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co., 174 F.3d 653, 657 (5th Cir. 1999)).  See also Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).  Conflicting interpretations and expectations are not necessarily sufficient to create an ambiguity.  Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 134 (Tex. 1994).

**B.   Application of the Law to the Undisputed Facts**

   1.   Applicability of Form F

Citing the Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement, also known as Form F, the Brunes argue that even "[i]f [their] claims against Orion Transport, Inc. in the underlying lawsuit are excluded under the terms of the Policy, [National] is nonetheless obligated to pay any settlement between the parties or judgment against Orion Transport,

-7-

Inc."[7]   The Brunes also argue that under the terms of Form F National is obligated to defend Orion in the underlying action.[8]

National argues that Form F only applies to motor carriers causing injury to the motoring public, and that this incident does not arise from a motor vehicle accident.[9]   Although the Brunes argue strenuously that Form F applies to the facts of this case, the cases that they cite in support of their argument are distinguishable because they do not involve accidents that occurred while a motor vehicle was being maintained but, instead, accidents that occurred while a motor vehicle was being operated.

Form F provides in pertinent part,

> the policy provide[s] insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.[10]

Citing <u>National Casualty Co. v. Lane Express, Inc.</u>, 998 S.W.2d 256, 263 (Tex. App. Dallas 1999), and <u>Lancer Ins. Co. v. Shelton</u>, 245 Fed.Appx. 355 (5th Cir. 2007) (unpublished), the Brunes argue that

---

[7]Defendants Silvia Brune, Cody Brune and Cory Brune's Motion for Summary Judgment, Docket Entry No. 14, p. 11 ¶ 27.

[8]<u>Id.</u> at 9 ¶ 21.

[9]<u>Id.</u>

[10]<u>See</u> Form F, Exhibit B attached to Plaintiff's Response and Cross-Motion, Docket Entry No. 20.

the laws requiring insurance for motor carriers are intended to protect the citizens of Texas injured by commercial motor carriers. National argues that the purpose of the Form F endorsement is to protect the motoring public and not to ensure citizens against any and all events involving a motor vehicle that causes bodily injury.

In Lane Express the defendant leased a truck and driver from an individual, and the driver subsequently killed and injured motorists while operating the vehicle while intoxicated. 998 S.W.2d at 258. National's policy provided coverage to the defendant but did not specifically list the vehicle involved in the accident. Id. National nevertheless paid its portion of the plaintiff's settlement and sought reimbursement from its insured. The court held that National could seek reimbursement from its insured regardless of whether the payment was made pursuant to a settlement or to a judgment. Id. at 265. The facts of Lane Express are distinguishable from the facts now before the court because Lane Express involved a motor vehicle accident between a tractor trailer and members of the public while the motor vehicle was being operated. Here, it is undisputed that the damages sought by the plaintiffs in the underlying action occurred while the motor vehicle was being maintained in a repair shop and was not being operated. Lane Express is also distinguishable because the applicability of Form F was not in dispute.

The Brunes also rely on Lancer, 245 Fed.Appx. at 355, for the principle that the laws requiring insurance for motor carriers is

for protection of the "citizens" of Texas injured by commercial motor carriers.[11]  National argues that the Brunes have mischaracterized the court's description of the parties that Form F is intended to protect.  Indeed, the <u>Lancer</u> court did not state that Form F exists to protect the "citizens" of Texas, but instead that "Form F . . . exists 'to ensure that liability insurance is always available for the protection of motorists injured by commercial motor carriers.'"  <u>Id.</u> at 358 (quoting <u>Lane</u>, 998 S.W.2d at 263).  <u>Lancer</u> is also inapposite because the claims at issue were for injuries sustained by passengers of a bus being operated on a public roadway.  <u>Id.</u> at 356.

Because the Brunes have failed to cite any Texas case applying Form F in a context other than an accident that occurred while the covered vehicle was being operated, the court is not persuaded that Form F requires National to defend and/or indemnify Orion in the underlying action.  Accordingly, the Brunes' motion for summary judgment that Form F provides coverage that requires National to defend and/or indemnify Orion for the claims asserted in the underlying action will be denied.

2.  <u>Applicability of the Policy's Pollution Exclusion</u>

The Brunes seek summary judgment that their claims are not barred from coverage by the Policy's Pollution Exclusion, and

---

[11]Defendants Silvia Brune, Cody Brune and Cory Brune's Motion for Summary Judgment, Docket Entry No. 14, p. 8 ¶ 19.

National seeks summary judgment that it has no duty to defend and/or indemnify Orion because the Brunes' claims are barred from coverage by the exclusion.

(a)  Duties Assumed in Insurance Policies

Under a typical insurance policy an insurer assumes two distinct duties:  the duty to defend and the duty to indemnify. See Trinity Universal Ins. Co. v. Employers Mutual Casualty Co., ___ F.3d ___, 2010 WL 6903, *3 (5th Cir. Jan. 4, 2010).  The duty to indemnify protects insureds "from payment of damages they may be found legally obligated to pay," while the duty to defend "protects the same parties against the expense of any suit seeking damages" covered by the policy.  Id. (quoting Pine Oak Builders, Inc. v. Great American Lloyds Ins. Co., 279 S.W.3d 650, 656 (Tex. 2009)). The insurer owes an insured neither a duty to defend nor a duty to indemnify when the types of claims made in the underlying action are specifically excluded from policy coverage.  See Lincoln General Ins. Co. v. Aisha's Learning Center, 468 F.3d 857, 862 (5th Cir. 2006).  Where there is no duty to defend, and no facts could be developed at trial of the underlying action capable of imposing coverage, the insurer's duty to indemnify may be determined on summary judgment.  See id.  See also Griffin, 955 S.W.2d at 83.

(b)  National's Duty to Defend Orion

Under Texas law the court must employ the "eight corners" doctrine when determining an insurer's duty to defend, meaning that

the court looks only to the allegations in the underlying pleadings
and the language of the insurance policy without regard to the
truth or falsity of the allegations.  See Noble Energy, Inc. v.
Bituminous Casualty Co., 529 F.3d 642, 645-46 (5th Cir. 2008).  See
also National Union Fire Ins. Co. of Pittsburgh, PA v. Merchants
Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997) ("An
insurer's duty to defend is determined by the allegations in the
pleadings and the language of the insurance policy.").  If the
underlying pleadings allege facts that state a cause of action
which may potentially fall within the scope of coverage, the
insurer has a duty to defend.  Noble Energy, 529 F.3d at 646.  The
insured bears the initial burden of showing that coverage exists,
and once established, the burden shifts to the insurer to show that
policy exclusions apply.  Id. (citing United National Ins. Co. v.
Hydro Tank, Inc., 497 F.3d 445, 448 (5th Cir. 2007), amended on
rehearing by 525 F.3d 400 (5th Cir. 2008)).

> When assessing the insurer's proffered exclusion, '[t]he
> court must adopt the construction of an exclusionary
> clause urged by the insured as long as that construction
> is not unreasonable, even if the construction urged by
> the insurer appears to be more reasonable or a more
> accurate reflection of the parties' intent.'

Trinity Universal, ___ F.3d at ____, 2010 WL 6903, at *3 (quoting
Utica National Ins. Co. of Texas v. American Indemnity Co., 141
S.W.3d 198, 202 (Tex. 2004), and National Union Fire Ins. Co. of
Pittsburgh v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991)).

-12-

### (1)  Pleadings in the Underlying Action

The pleadings in the underlying action allege:

> On February 3, 2009, Orion Transport, Inc. used its
> 1977 Heil Tanker Trailer (Serial Number 928508) to haul
> salt water from a well owned by the Etoco Defendants.
> Upon information and belief, Plaintiffs allege that the
> salt water contained dangerous and explosive hydrocarbons
> and/or other explosive chemicals or petroleum byproducts.
> Orion Transport, Inc. ultimately hauled the salt water to
> a disposal well in Colorado County, Texas and offloaded
> the salt water purportedly emptying the trailer.
> Plaintiffs allege that a dangerous and potentially
> explosive residue remained in the trailer.
>
> Further, at various times, Orion used its trailer to
> transfer oil between tanks for the Etoco Defendants.
> Plaintiffs allege that a dangerous and potentially
> explosive residue from these transfers remained in the
> trailer.
>
> On February 4, 2009, Orion hired the Decendent, a
> welder by trade, to perform maintenance on its 1977 Heil
> Tanker Trailer (Serial Number 928508).  After emptying
> the contents of the trailer, Orion delivered the trailer
> to Decendent's place of business, C&C Welding, and left
> the trailer parked in Decendent's welding shop.  While
> performing the requested maintenance, Orion's trailer
> exploded injuring James Brune, Jr. who later died as a
> result of his injuries.[12]

### (2)  Pollution Exclusion

The Pollution Exclusion that National argues bars coverage for

the Brunes' claims provides:

> 11.  Pollution
>
> "Bodily injury" or "property damage" arising out of
> the actual, alleged or threatened discharge,

---

[12]Plaintiffs' Second Amended Petition, Exhibit A attached to
Second Amended Complaint for Declaratory Judgment, Docket Entry
No. 19, p. 3.

dispersal, seepage, migration, release or escape of "pollutants":

a.    That are, or that are contained in any property that is:

(1)   Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

. . .

(3)   Being stored, disposed of, treated or processed in or upon the covered "auto."[13]

"Pollutant" is defined by the Policy to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."[14]   There is no dispute that the "dangerous and potentially explosive residue" that the Brunes allege "remained in the trailer" is a "pollutant" under the Policy.

### (3)   Application of the Pollution Exclusion to the Pleadings

National argues that the claims asserted by the Brunes are excluded from coverage because the damages for which they seek recovery were caused by "bodily injury" that arose "out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants," and because the

---

[13]Policy No. CTO0118238 - Section II - Liability Coverage, Subsection B.11, Exhibit A attached to Second Amended Complaint for Declaratory Judgment, Docket Entry No. 19.

[14]Id. at Section VI - Definitions, Subsection L.

-14-

pollutants were "transported" and/or "stored" in Orion's tanker
trailer.  Acknowledging that the Brune Defendants' Second Amended
Petition alleges that "'dangerous and potentially explosive
residue' was in the trailer, and [that] the explosion occurred
while Brune performed the maintenance [welding]," National argues
that "[t]he difference now present in the Second Amended Petition
is the absence of a reference to the trailer's leak, present in the
two prior petitions, the reason for the requested welding
maintenance."[15]  Asserting that "the Brune Defendants are trying to
artfully plead their case into coverage under Orion's Policy,"[16]
National argues that "the reasonable interpretation of their
factual claims indicate that the Pollution Exclusion applies."[17]
In support of its argument National cites <u>Allstate Ins. Co. v.</u>
<u>Hallman</u>, 159 S.W.3d 640 (Tex. 2005), for the principle that the
court can draw reasonable inferences regarding the factual
allegations of the underlying action.  National cites <u>Zaiontz v.</u>
<u>Trinity Universal Ins. Co.</u>, 87 S.W.3d 565 (Tex. App. -- San Antonio
2002, pet. denied), as an example of a case in which a court has
enforced a pollution exclusion similar to the one at issue here
after drawing reasonable inferences from the allegations made in
the underlying action.

---

[15]Plaintiff's Response and Cross-Motion, Docket Entry No. 20,
p. 11.

[16]<u>Id.</u>

[17]<u>Id.</u>

Asserting that "[i]f anything, the explosion caused the release of the purported pollutants,"[18] the Brunes argue that the Pollution Exclusion does not apply under the facts alleged in their pleadings because the tanker trailer had been emptied of its salt water cargo before being delivered to Brune's shop, and that when the explosion occurred Orion was not transporting, towing, storing, disposing of, treating or processing pollutants in or upon the tanker trailer.   Asserting that "[n]one of these terms -- transporting, towing, storing, disposing of, in the course of transit, treating or processing -- are specifically defined in the Policy,"[19] the Brunes contend that "[a]t the very least, there is a fact issue as to coverage which in turn gives rise to Plaintiff's duty to defend its insured."[20]

In <u>Zaiontz</u> the plaintiff was injured while spraying a smoke and fire odor eliminator in the interior of a smoke-damaged airplane.   87 S.W.3d at 571.   The defendant insurance company argued that coverage for the plaintiff's injuries was excluded under the plain language of the policy's pollution exclusion "because the injuries -- and consequent liability -- arose from 'the actual . . . dispersal . . . of [a] pollutant[],' *i.e.*, the Smoke and Fire Odor Eliminator."   <u>Id.</u>   The plaintiff argued that

---

[18]Defendants Silvia Brune, Cody Brune and Cory Brune's Motion for Summary Judgment, Docket Entry No. 14, p. 12.

[19]<u>Id.</u> at 13.

[20]<u>Id.</u>

his claims were not barred by the pollution exclusion because "his injuries did not arise from the 'discharge, dispersal, seepage, migration, release or escape,' of the smoke and fire odor eliminator because the substance did not leave the location of its [intended] placement -- the interior of the smoke-damaged airplane." Id. at 571-72. Relying on dictionary definitions of "discharge," "disperse," and "release," the court rejected the plaintiff's argument that no "discharge, dispersal, seepage, migration, release or escape" had occurred because the pollutant had not been moved from its intended location, id. at 571-572, and concluded instead that the smoke and fire odor eliminator that the plaintiff had "sprayed" into the airplane's interior triggered the pollution exclusion because it was a "pollutant" and allegations that the pollutant had been "sprayed" were the functional equivalent of allegations that the pollutant had been discharged, dispersed, or released. Id. at 573-74. National fails to point to any term used in the Brunes' Second Amended Petition that is the functional equivalent of "discharge, dispersal, seepage, migration, release or escape."

Moreover, even assuming that a reasonable inference could be drawn that a release of a pollutant occurred, National has failed to carry its burden of showing that the plain language of the Pollution Exclusion bars coverage for the Brunes' claims because that exclusion does not bar all claims arising from a release of a pollutant but only bars those claims arising from a

release or escape of "pollutants:"

    a.    That are, or that are contained in any property
        that is:

        (1)    Being transported or towed by, handled, or
                handled for movement into, onto or from, the
                covered "auto";

                      . . .

        (3)    Being stored, disposed of, treated or
                processed in or upon the covered "auto."[21]

Although National argues that subsections 11.a(1) and 11.a(3) of the Pollution Exclusion bar coverage for the Brunes' claims because the pollutant at issue was "transported" and/or "stored" in the tanker trailer, the court is not persuaded that the plain reading of these terms bars the Brunes' claims.

    National contends that subsection 11.a(1) bars coverage for the Brunes' claims because "the 'dangerous and potentially explosive residue' that remained in the tank was still 'transported' despite the Second Amended Petition's allegation that the salt water previously hauled by Orion had been disposed of on the day before the accident."[22]  Acknowledging that "transport" is not a defined term in the Policy, and that "[n]o Texas court has

---

[21]Policy No. CTO0118238 - Section II - Liability Coverage, Subsection B.11, Exhibit B attached to Second Amended Complaint for Declaratory Judgment, Docket Entry No. 19, and Plaintiff's Response and Cross-Motion, Docket Entry No. 20, p. 13 (explaining that National is relying only on subsections a(1) and (3) of the Pollution Exclusion to bar coverage for the Brunes' claims).

[22]Plaintiff's Response and Cross-Motion, Docket Entry No. 20, p. 14.

interpreted the word 'transported' in this context,"[23] National asserts that the dictionary definition of the term is "to convey from one place to another,"[24] and argues that the trailer's contents remained in transport despite the fact that the trailer was parked at Brune's welding shop for maintenance.  National explains that

> [t]here is no requirement in the policy that a certain volume or amount of pollutants be involved, and none has been applied by any court.  Thus, the fact that Orion had disposed of the salt water that allegedly left a residue inside the trailer should have no bearing on its applicability.[25]

The court is not persuaded that the dictionary definition of "transported" cited by National supports its contention that the Pollution Exclusion bars the Brunes' claims.  The pleadings in the underlying action do not allege that either the tank or its contents were being conveyed from one place to another when the explosion occurred but, instead, allege that they had been delivered to Brune's welding shop for maintenance.  Accordingly, the court concludes that the Brunes' claims are not barred by Subsection 11.a(1) of the Pollution Exclusion, which bars claims arising from pollutants being transported.

National contends that subsection 11.a(3) applies to bar coverage because "the pollutants were undeniably still 'stored' in

---

[23]Id.

[24]Id.  (citing Webster's Ninth New Collegiate Dictionary (1988)).

[25]Id.

the tank.  In fact, the Second Amended Petition alleges that Orion was negligent for failing to properly vent and clean the interior of the tank before the explosion, allowing a dangerous residue to form and remain."[26]  Acknowledging that "stored" is not a defined term in the Policy, National argues that

> [t]he salt water hauled by Orion had been in a tank and then transferred and stored in the truck's tank for movement to the disposal site.  The trailer acts to store its contents during transit until the contents are disposed of.  In this case, some undefined amount remained despite the trailer's emptying, and the remaining amount would qualify as being 'stored' in the trailer.[27]

National explains that

> [t]here can be no dispute that the trailer (a tank in this instance) was itself a storage container for the salt water and the alleged "dangerous and potentially explosive" chemicals or residue that had been transported by Orion before the accident.  In that regard, the dangerous residue that was allegedly allowed to form was clearly being stored at the time of the trailer's maintenance.[28]

In support of this argument, National cites a dictionary definition of "store" that includes "to place or leave in a location for preservation or later use or disposal,"[29] and <u>Noble Energy</u>, 529 F.3d at 642, where the Fifth Circuit, interpreting Texas law, held a pollution exclusion similar to the one at issue here unambiguous.

---

[26]<u>Id.</u>

[27]<u>Id.</u> at 15.

[28]<u>Id.</u>

[29]<u>Id.</u> at 15(citing <u>Webster's Ninth New Collegiate Dictionary</u> (1988)).

The court is not persuaded that the dictionary definition of "store" cited by National supports its contention that the Pollution Exclusion applies to bar the Brunes' claims because vapors from the salt water and/or oil hauled in the trailer were stored there when the explosion occurred. The Brunes' Second Amended Petition alleges that Orion "hauled salt water to a disposal well in Colorado County, Texas, and offloaded the salt water purportedly emptying the trailer," "that a dangerous and potentially explosive residue remained in the trailer," that Orion delivered the trailer to Brune's welding shop "[a]fter emptying the contents of the trailer," and that the trailer exploded while Brune was "performing the requested maintenance."[30]   Since the Brunes allege that the materials hauled in the trailer were offloaded and the trailer emptied before being delivered to Brune's shop for maintenance, the allegations that vapors remained in the trailer are not the functional equivalent of allegations that the vapors were "stored" in the trailer because the allegations do not support a reasonable inference that the vapors in the trailer were placed or left there "for preservation or later use or disposal."[31]   Nor is the court persuaded that the Fifth Circuit's decision in <u>Noble Energy</u>, 529 F.3d at 642, mandates a different conclusion.

---

[30]Plaintiffs' Second Amended Petition, Exhibit A attached to Second Amended Complaint for Declaratory Judgment, Docket Entry No. 19, p. 3.

[31]Plaintiff's Response and Cross-Motion, Docket Entry No. 20, p. 15 (citing <u>Webster's Ninth New Collegiate Dictionary</u> (1988)).

National argues that the facts of <u>Noble Energy</u> are remarkably similar to the facts of this case because they involve the contents of trucks causing explosions.  As does the Pollution Exclusion in this case, the pollution exclusion at issue in <u>Noble Energy</u> barred coverage for "bodily injury or property damage arising out of the actual, alleged, or threatened discharge, dispersal, release or escape of pollutants." <u>Id.</u> at 646.  There, basic sediment and water were collected in tanks and loaded into trucks. <u>Id.</u> at 644. When the trucks arrived at a facility to dispose of the basic sediment and water, the drivers got out of the trucks to complete paperwork, leaving the diesel engines running. <u>Id.</u>  While employees were unloading the trucks, the truck engines began to race and one of the engines exploded, causing a fire that engulfed both trucks and killed two people. <u>Id.</u>  The insurer argued that the pollution exclusion applied to bar coverage for the claim. Explaining that Texas courts have consistently held pollution exclusions unambiguous, the court addressed the question of whether the injuries at issue arose out of the "discharge, dispersal, release or escape of pollutants." <u>Id.</u> at 646.  The court held that the pollution exclusion applied to bar coverage because the basic sediment and water and the combustible vapors that emanated from them met the definition of a pollutant and the bodily injuries alleged arose out of the discharge, dispersal, release, or escape of the basic sediment and water and its vapors. <u>Id.</u> at 647.  The Fifth Circuit's decision in <u>Noble Energy</u> is inapposite because the

issue in dispute there was whether a release of a pollutant had occurred not, as here, whether a pollutant had been "stored."

### (4)  Conclusions

For the reasons explained above, the court concludes that the Policy's Pollution Exclusion does not bar the Brunes' claims because the Second Amended Petition filed in the underlying action does not allege facts supporting a reasonable inference that the "release or escape of 'pollutants'" occurred

> a.    [t]hat [were], or that [were] contained in any property that [was]:
>
> (1)   Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";
>
> . . .
>
> (3)   Being stored, disposed of, treated or processed in or upon the covered "auto."[32]

Accordingly, the court concludes that National's motion for summary judgment that the Brunes' claims are barred by the Pollution Exclusion should be denied and that the Brunes' motion for summary judgment that their claims are not barred by the Pollution Exclusion should be granted.

### (c)  National's Duty to Indemnify Orion

While the duty to defend is based solely on examining the eight corners of the operative complaint and insurance policy, the

---

[32]<u>See</u> Policy No. CTO0118238 – Section II – Liability Coverage, Subsection B.11, Exhibit B attached to Second Amended Complaint for Declaratory Judgment, Docket Entry No. 19.

duty to indemnify is controlled by "the facts actually established in the underlying suit." <u>Trinity Universal</u>,\_\_\_ F.3d at \_\_\_\_, 2010 WL 6903, at *3 (quoting <u>GuideOne Elite Ins. Co. v. Fielder Road Baptist Church</u>, 197 S.W.3d 305, 310 (Tex. 2006)). "Therefore, 'an insurer may have a duty to defend but, eventually, no duty to indemnify.'" <u>Id.</u> (quoting <u>Farmers Texas County Mutual Ins. Co. v. Griffin</u>, 955 S.W.2d 81, 82 (Tex. 1997)). The Brunes argue that "[a]ny determination by this court of the issue of duty to indemnify before the underlying suit is resolved is premature."[33] Since, for the reasons explained above, the court has already concluded that the Brunes' claims are not barred by the Pollution Exclusion, a decision regarding National's duty to indemnify Orion cannot be made until the facts have been established in the underlying action. Accordingly, the court concludes that this action should be stayed pending resolution of that action.

## C.  Conclusions

For the reasons explained above, the court concludes that the Brunes' motion for summary judgment should be denied in part because they have failed to carry their burden of showing that coverage for the claims alleged in the underlying action is provided by Form F. The court concludes that the Brunes' motion for summary judgment should be granted in part and that National's

---

[33]Defendants Silvia Brune, Cody Brune and Cory Brune's Motion for Summary Judgment, Docket Entry No. 14, p. 14.

motion for summary judgment should be denied because National has failed to carry its burden of showing that the Policy's Pollution Exclusion bars coverage for the claims alleged by the Brunes in the underlying action.  The court concludes that this action should be stayed pending resolution of the underlying action.

### IV.  <u>Conclusions and Order</u>

For the reasons explained above, Defendants Silvia Brune, Cody Brune and Cory Brune's Motion for Summary Judgment (Docket Entry No. 14) is **DENIED IN PART and GRANTED IN PART**.  Defendants Silvia Brune, Cody Brune and Cory Brune's Motion to Dismiss Under Rule 12(b)(6) (Docket Entry No. 15) is **MOOT**.  Plaintiff National Casualty Insurance Company's Cross-Motion for Summary Judgment (Docket Entry No. 20) is **DENIED**.  This action is **STAYED** pending resolution of the underlying state court action.  Counsel will submit a joint status report on April 16, 2010, and every sixty (60) days thereafter.

**SIGNED** at Houston, Texas, on this 22nd day of February, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE